We're going to take a break from the Wayne Land and Mineral Group case and begin argument in Delaware Riverkeeper and other petitioners v. Sec PA Dept of Environmental Protection. We'll go ahead and call that case and ask counsel to approach Mr. Stemplewitz. Good morning, your honor. My name is Mark Freed. May it please the court, my name is Mark Freed. And I represent appellants and petitioners Geraldine Nesbitt and Lancaster against Pipeline. Also at counsel table is Mr. Stemplewitz for Delaware Riverkeeper Network and Ms. Sank for Sierra Club. All right. Thank you. I would like to reserve two minutes for rebuttal. I will be taking nine minutes on my primary argument. Understood. Thanks. You may proceed. I want to primarily discuss two issues. One is the jurisdiction of the court to consider a non-final agency order. And second is the harms that arise from the manner in which DEP sequenced the water quality certification with the environmental permits and the deprivation of fundamental property rights that that results in. Okay. Let's get right into the jurisdictional piece, Mr. Freed. I've got a question for you. Okay. Do you agree or disagree that what we're asking, the question of finality, is a question of federal law? The question of finality, yeah, I would agree with that. I would agree it's a question of federal law. Okay. And we could, if we thought it prudent, we could look to state law for some guidance. Correct. But ultimately, the question we're deciding is whether under the Natural Gas Act, the agency decision is sufficiently final for review, correct? See, that's where I would disagree, Your Honor. I think the question is under federal jurisprudence, as enunciated by the Supreme Court in Belvers, New Jersey, whether or not it's final. And what the court said is there's a strong presumption of finality unless the Natural Gas Act or some other act says there's not. So I think the argument's been flipped on its head. I think we're actually talking about two different things. You're answering the question, is there a finality requirement in the federal law? And you're right, under Bell, the Supreme Court has said there's a strong presumption that there is a finality requirement. But the question of whether the thing that happened in this case, in fact, meets that finality requirement, that's a point which is a question of federal law to be answered under the Natural Gas Act. And I think what the court is doing is it's flipping the presumption. The presumption there's a default that finality is required unless there's something specific in the Natural Gas Act that says it's not. I apologize. I'm trying to be difficult, but we're talking past each other. It appears to me that there are two different questions. One question is, is finality required by the Natural Gas Act? That's the question that might be answered by Bell, and what you're asserting is answered by Bell, and that yes, there has to be a final agency action for there to be a valid petition for review over which we'd have jurisdiction. Correct. That's not what I'm trying to ask you about. I'm trying to ask you about the facts of this case. That is, whether or not one looks at the facts of this case and says what happened here is final. That question, when you approach that question, you approach it not saying whatever state law says is final is final, but as a matter of federal law, is what happened here something that constitutes finality? That's what I'm trying to ask you. And would you agree that that's the approach, that latter approach, that it's a question of federal law whether or not what happened here meets the threshold of finality? Yeah, I would agree with that, Your Honor, but I think you have to look at, it has to be informed by the state law, and it has to be informed by a specific reference to the fact that DEP's actions under the Environmental Hearing Board Act are not final until the EHB has had an opportunity. DEP had nothing else to do, though. I'm sorry? DEP had nothing left to do here. Yeah, but the idea that because the Environmental Hearing Board doesn't get paid by DEP, as opposed to Massachusetts where their administrative law judges get paid by DEP, shouldn't make a difference. The fact that the Pennsylvania decided instead of putting our ALJs in the DEP, we're going to create a separate agency that does essentially what they would do if they were in DEP, like they were originally in DER, that's a difference without a distinction. The bottom line is that the... It seems like a very large distinction. Yeah, that's... The Pennsylvania separated them, and I think you're right to say that the question of finality is informed by state law because how the state conducts its business in this area will give us clues as to whether it's acted in a final way or not. DEP has nothing left to do, and under the state scheme, it does not act as an automatic supersedious. Here's why the fact that it doesn't act as an automatic supersedious is significant. Here's why in the system that the state has set up, you can't just ignore the fact that EHB, as essentially finishing the process for DEP, has the role. This isn't like we don't have the Administrative Procedures Act. We don't have a situation where generally DEP is instructed on how to prepare a record. The record, because we have these two separate but interrelated agencies, the record of the DEP action is created at the EHB. And that's how the state courts have said due process is protected. Without that piece, due process is not protected. Then how is it that an agency, a PDEP decision, is final if somebody chooses not to appeal? It's not final. Now, does it have effect? If they choose not to appeal and the 30 days expires, is it not final as to that person? If they choose not to appeal and they don't go through some other methods, 30 days is only one method, and we've briefed the fact that there can be non-proton, we've briefed the fact that this court has the ability under state law to transfer to the EHB. But if all those are waived, that becomes final. But until that happens, it's not final. When a district court enters an order, is that a final order? A district court of the United States? Yes. It's a final order because it hasn't been said. It's a different system. The state system is such that when you issue an order, and I'm not saying that, in fact, you mentioned the supersedious thing. I think it's clear that the order has some import. It takes effect, barring a supersedious. But it doesn't mean that it's a separate question about whether it's final for this court's review. But isn't the logical way to look at it is to say that it's final but subject to appellate review, in the same way that a district court order is a final order, but it's subject to appellate review in this court? Because what's the difference between the state scheme and you have a record and you protect the due process rights by going through a district court process? All right, so then it's really not about final agency action as much as it is about constitutional due process. Well, that's a major piece of it. It's a constitutional due process issue, but that's all built into the state action. I'm sorry, Your Honor. So your argument then, as I understand it, is that if we were to find the DEP's decision final, it would deprive you of due process because you're not able to make the kind of record that you would like to make. I think that's absolutely right. It would also deprive this court of the ability to have a full record to review, as it would have if it had gone through a district court process. Does it necessarily then follow that what you're saying is that the Pennsylvania system is constitutionally infirmed? Because if the decision of the Pennsylvania Department of Environmental Protection is final and takes effect absent a supersedious, what you're saying is they've got a scheme whereby people are deprived of due process because orders can take effect and things start happening. No, that very issue has been addressed by the state courts, and they said as long as the EHB has the opportunity and as long as an appellant has the opportunity for a full and fair review by the EHB, even if it's after the fact, due process is not provided. The problem here is the way appellants are trying to set up the scheme, they're essentially trying to say, we're going to take that piece out. Do the state courts say that in the absence of EHB review, there would be a violation of due process? I don't know. The question that has been presented is, is the EHB reviewing after the fact a violation of due process? And they said, no. I think the courts would say that there's a deprivation of due process because at that point,  and I know there's a chart and we've addressed the chart in our briefs and we have our own chart, but in Massachusetts, they still have an environmental law judge that reviews the action of the agency, the same that we have in Pennsylvania. And even the EHB said, who knows the process best of all? This is an almost identical process. This is the same process. You need that ability. Without an APA, without a federal system that specifically sets up how a record is going to be made, how does this court know what the record should be? It doesn't. And there's been no opportunity for evidence. And don't we need to, as we approach this, ask ourselves the question, what does the Natural Gas Act expect in terms of state processes moving these things forward? And if we ask ourselves that question, we can be informed by state law, but we're not controlled by state law. Would we be in a posture where we would say, okay, if that's the review that's required, then maybe that's not so good for environmental interest groups and for the state because that means they can't possibly meet the one-year deadline set in the Natural Gas Act for review and this defaults back to the federal government and the state has no part or parcel in it. And Judge Shore, I really appreciate you raising that because that's a really fundamental question, which is the one-year issue for DEP to make a decision versus the finality that's conflating two separate issues. The one-year issue is DEP has one year to act. The same that DEP has certain requirements. We have in Pennsylvania, we have a money-back guarantee program. They have to act. If you permit a landfill, the landfill can build. It still goes through the environmental hearing process. What you're suggesting is that when Congress set that one-year deadline in place, they anticipated and were okay with the idea that the action, the final action in your state would occur much past the year. You're saying PDEP has to, and I apologize if I'm using a lingo here that nobody else does. No, that's actually what many people use. Okay. That PDEP has to act in a year, but your position also is that that's irrelevant. In other words, the thing that Congress wants to have happen is a functional irrelevancy because it has no meaningful due process effect in the system. That's a difficult. No, no. It does have a due process. Okay. Can I use the analogy, Your Honor, of permitting a landfill? A landfill gets permitted. The owner of the landfill immediately upon issuance of the DEP order can build his landfill. While he's going through the environmental hearing board process, absence is supersedious. It's the same thing here. There is a final action taken by the DEP that FERC can rely on. Now, FERC, it's a separate question about how, and FERC has different policies in different situations, about how they're going to deal with issues, orders, while it's going through administrative processes. But how FERC deals with it, and this was the issue that came up in the 2016 correspondence between FERC and DEP. But the fact that there is now, DEP has taken an action. FERC now knows that at a first pass, DEP has said, this is okay. Well, that's interesting because, and maybe I should be asking this of your colleague who's here on behalf of Delaware River Keepers, but I thought one of the issues in the earlier rounds of battles over other pipelines, like in Delaware River Keeper number one, the 2016 case, there was some pretty strong feeling behind the notion that FERC couldn't do it. It was a bad thing. People were going to start doing things on the basis of a PDEP decision, and that was wrong. And the argument in response, and the decision made by the court was, well, don't worry, because nothing's going to happen until the later permits are issued. You seem to be saying, it's okay, because FERC can start doing things. So, I understand you represent different parties, but the fact that you're on the same page on this stuff. We are. So, am I perceiving a false conflict? Which is it? Is it, holy smokes, you've got to stop all this right now because FERC might allow the parties, TRANSCO, to do something? Or is it, hey, it's all good, even though this might take years, because FERC can start doing something and TRANSCO can start doing something? Well, but that's exactly the situation that's been set up, and what I'll say, and that actually leads into the other issue, which is, what is the harm? The problem is, in the Leidy cases and the other cases, the only thing the court really considered was, what is the harm from construction? There's no construction until everything's issued, until the environmental permits, the 401, the certificate of public convenience. So, what difference does it matter what order it's in? And if you only look at those harms, I would say, yeah, I agree. It's a no harm, no foul situation. The point of our briefs, the point of what we're arguing here, is there's other harms, and those harms are the deprivation of due process rights that occur because a taking is happening. But to answer your question more directly, the way it's set up now is essentially that FERC is now taking, is allowing DEP to issue a water quality certification before there's even any environmental permits. I mean, isn't that even a more absurd result? That's right. Isn't that right, the same thing? I mean, the argument of out-of-sequence decision making was exactly the argument made by, I don't know whether Mr. Stempelitz was the one who made that argument, but it was pressed on that panel, and they said that's not a problem. It's not a problem. It's not a problem when you're only looking at construction. It's clearly a problem if you're looking at the other harms that arise, particularly since DEP is now saying we have a viable project that can move forward. Why is that any different than the harm in Delaware Riverkeeper No. 1? If, in fact, it's the case, I understand we might have some discussion about that, but if, in fact, it is the case that nothing can happen until all the permits are issued, why aren't we in exactly the same posture in this case as were the petitioners and the parties in Delaware Riverkeeper No. 1? That's exactly right, because something is happening. People are losing their property. Property is being taken based on an empty document and a certificate of public convenience that says, how do you understand this? That's a FERC-based collateral attack on FERC. No, FERC looks to 401. 401 means anything. It means that the federal agency has to look to the state agency to determine whether or not the project is viable, and it's going to be protective of environmental concepts, and the FERC is essentially acting. This is the whole correspondence in the 2016 letter. If your real issue is eminent domain, then don't you have a standing argument you need to address first? How is your client in a position to assert the rights of people whose property is being taken? Lancaster Against Pipeline, as well as DRN and Sierra Club, all have members who are losing property by eminent domain. Yeah, but that doesn't answer the question, which you know exists because it's been briefed about the zone of interest involved in the case, right? And how do you fit within that zone of interest as an environmental advocacy group? Eminent domain, and I think the only decision to really address this is the gunpowder decision. At a D.C. circuit, it was a two-to-one decision, and I think Judge Jordan in the dissent very clearly, I think, laid out, frankly, the rationale that this court should accept that eminent domain is an environmental issue. It is a right protected by the Clean Water Act. The dissent, though, right? It was a dissent in a two-to-one decision by the D.C. circuit, and I think as Judge Hardiman said earlier when you were listening, all the various circuits that it held one way, we don't have that in this situation. Okay, good. One quick question. There is a right to appeal to the Commonwealth Court after a decision by the Environmental Hearing Board. I think that's the question of what the Natural Gas Act doesn't require. Does it cut off the appeal from final agency action or not? I don't think it cuts off the administrative review. I think there's at least an argument, and again, it's not really before the court, and we haven't delved into it, about whether or not it would cut off an appeal or whether it goes directly to this court. Well, I think it's important because the 2005 amendments to the Natural Gas Act say that the purpose of the amendments were to expedite this matter. Correct. It seems to me that your view may prevent Congress's will in this situation. We would concede for the purpose of this argument that it would go directly to this court and not the Commonwealth Court. I know that at least one Environmental Hearing Judge has raised the issue of the Tenth Amendment, about whether or not the Tenth Amendment would preclude the cutoff of both EHB and the appellate process. But at this point, I think our primary concern is making sure we're able to establish a record and through that process, safeguard the due process rights of the appellants. Okay. Thanks very much, Mr. Fried. Thank you. Mr. Stemple, what's your argument, please? Thank you, Your Honor. Aaron Stemple is on behalf of the Delaware Riverkeeper Network and the Delaware Riverkeeper. I think I'm going to start in a place that maybe will help contextualize why it's important that review first be had at the EHB. I think it goes right to the actual merits of our claims with regard to public notice and the NPDES permit. The way in which Pennsylvania has devised its regulations for public notice and specifically for the NPDES permit were devised in such a way that never contemplated that a review of a NPDES permit would ever come directly from DEP straight to circuit court. And we know this because in the way the regs are set up now, there's no time or place for an aggrieved party, whether it's a landowner who has a stream in their backyard that's being – water's being taken out or they live in the Lakeford community and water's being taken out to be used in hydrostatic testing. There's no way for them to build a record. Except that's true, would the correct decision be to say in this instance then the action was arbitrary and capricious and send it back to PDEP and tell them you've got to give notice and comment before one of these NPDES permits is done and then 60 days later we're back here again? Potentially, but our request for relief is quite modest and that is what we're requesting here is for the court to remand the 401 and require notice and comment period sufficient for people to build a record if they're aggrieved regarding the NPDES permit. And that way the NPDES permit can be challenged on its substance rather than relying on a record in which no one other than DEP had an opportunity to build. Which is what we had happen here. That's why our only argument is a procedural argument. It's the only one we could raise here because we weren't able to submit comments on the substance of NPDES permit. And I think the lack of clarity is also clear here. Hold on just a moment. Let me ask you a quick question. If we were to agree with your colleague, Mr. Freed, that in fact there's no jurisdiction yet because there has to be an opportunity to appeal to the EHB, doesn't that undermine your argument about this NPDES permit? Because then you would have, in the context of the EHB hearing, an opportunity to talk about this and you'd get all the process you were due. Is that right? I think we would get the opportunity to build a record at that point. Doesn't it actually just eliminate your argument? Because then you've got your opportunity. You've had notice. You've had your opportunity to be heard. You've gotten everything you're entitled to in the way of due process, albeit in the context of an EHB hearing. Is that right? Well, the way in which I would look at it is that the whole purpose of public comment, and this is clear from the entire line of case law discussing what public comment means, is that, and we can look at the Lake Erie Alliance case that we briefed, is the purpose of public notice is to invite public comment prior to a final decision. That's all that we're asking. And if we get that through the EHB process, then we're happy and then we're satisfied. Okay. Thanks very much, Mr. Stumpwits. We'll hear from counsel for the Department of Environmental Protection. Good morning, Your Honors. My name is Joe Segan, and I represent Patrick McDonald, Secretary to the Pennsylvania Department of Environmental Protection, and I also represent the Pennsylvania Department of Environmental Protection. Thanks. And we've got real limited time, so I'm going to hit you right out of the box. I want you to respond to Mr. Freed's assertion about how the system works, that is, the assertion that there is no meaningful record developed before PDEP issues its decision, that the way the state has established its program, EHB review is essential to even have an administrative record of the sort one usually associates with an agency final action. Yes, Your Honor. It's the department's position that there is a robust record that is currently before the court, the record that the department certified for this court's reviews in excess of 23,000 pages. And how do you respond to the cases cited by petitioners that say, from the state's courts, that say don't worry about feeling like you're not getting your due before the department because you get due process because of the EHB running a de novo hearing and taking evidence and building a record? Well, the department relies upon its public notice and public comment process. In this case, it was not an application for a permit. It was a request for a state determination that the project complies with water quality standards. Right. I apologize. Let me try to make this clear. I understand their argument to be the state itself, through its courts, has said that this is all one process. You don't get due process until you've gotten a full environmental hearing board hearing after a PDEP action because that's the way you're going to get an opportunity to be fully heard and develop your record. I'm probably doing less than justice to Mr. Freed's and his colleagues' position, but I understand that to be what they're saying. I'm trying to get you to respond to that. If that's really what the state courts have said, why would we say EHB review unnecessary? Go ahead. Cut it off at PDEP. Well, Your Honor, I'm sorry if I'm not responding to your point correctly, but I don't think the petitioner characterization is fair as to the review process that's been set up. Is that what the state courts say? Well, what the Environmental Hearing Board Act says, that if no one challenges the department's action, it would become final. Sure. But have they accurately characterized the state court's decisions about how essential EHB review is to petitioners getting due process? No, I don't think that is the fair characterization. I think it's the opportunity to challenge that gives them due process to the record. When the Environmental Hearing Board reviews a final action of the agency, it's reviewing that decision-making process. It is materially different than Massachusetts, say, where the internal agency review process does not come to completion until there's been opportunity for administrative review. All right. Then with respect to the argument that's being made by the River Keepers Council, if we were to agree with you that PDEP certification or decision-making is sufficient to constitute final agency action, how can the action of the department be viewed as something other than arbitrary and capricious when it is contingent upon the filing or issuance of a permit as to which the department itself acknowledges there is no opportunity to be heard, there's no notice and no opportunity to be heard because the NPDES permit is issued in final form without any notice? Well, Your Honor, I don't think that it's a fair characterization. The petitioners do have a due process right. In fact, they are currently challenging that NPDES permit acknowledgement before this court. Well, stop for a second. Let's imagine a case where there were no other permits that were in play. It was a water quality certification under 401 and the sole contingency put on it by the department was issuance of a NPDES permit. Then, by law, under Pennsylvania's handling of this, that NPDES permit could issue with no notice and in a final form and the water quality certification would cease to be contingent and nobody with an interest would have had an opportunity to be heard and to argue until they petitioned or if they petitioned to this court. Is that right? Just stick with me and handle the hypothetical if I've made it understandable. Well, I don't think it's correct because of the nature of the NPDES permit that we're talking about. This was a registration under an existing NPDES permit. The department created a permit for certain, has the authority, and this has been vetted through its federal delegation of the program, to issue a general permit that encompasses certain activities and the agency would receive a request to operate and there was opportunity for notice of comment on that particular permit. There's no, I mean I can pull it out and read it to you. There's a, I've read it. It looks like the department, the state, has taken the position that, unlike the Chapter 105 permit, unlike the Chapter 102 permit, where there is some notice and is some opportunity to be heard before a permit is issued, the NPDES permit, there's no notice and it's issued in final form. Is that accurate or not? There was an authorization to issue work under this permit and there was no advance public notice in comment on the request to use that permit. Yeah, and not just in this instance. That's the way the department says we handle these NPDES permits. No, that's not an accurate statement. We could have received an application for an individual NPDES permit that would have, under state law, would have gone through a notice and comment opportunity. Since the application was made to use a general existing permit, it was processed in accordance with state law. I'll just read you from the Pennsylvania Bulletin Document Number 15-1273. PAG-10 General Permit Notice of Intents, and I take that to be a reference to NPDES permits, right? The notice of intent is the application to use that permit. Right, but the permit is a NPDES permit, right? Yes, Your Honor. Okay. For those, quote, the department will publish notice in the Pennsylvania Bulletin for approvals of coverage only. In other words, I take it, when I read that, I understand it, and I don't claim to be an expert in this Pennsylvania law the way you are, Mr. Segan, that what the department is saying there and publishing to the world is, you're going to find out about this when we publish the approval. That was an accurate reading, Your Honor, and the department does not publish notice of the receipt to use that comment. Okay, so take my hypothetical then. Imagine a water quality certification, a single contingency NPDES permit. That water quality certification ceases to be contingent when the department issues, not after notice, not after an opportunity to be heard, but just when it announces we've approved it, the NPDES permit, right? I'm sorry, Your Honor, I'm not sure I followed your question. A single contingency, a NPDES permit. If you've got that circumstance,  and nobody will have received notice or opportunity to be heard because the one contingency is a type of permit as to which the department has chosen to give no notice or opportunity to be heard. It chooses to say we will announce the approval, the final, not a notice and an opportunity to discuss before we approve. Thank you for the clarification, Your Honor. I understand where you're going. I don't think that is a fair characterization because the condition in this water quality certification required the acquisition of a NPDES permit. That could have been through an application for an individual permit or application for an NOI under an existing permit. The issuance of either an authorization under an existing permit, a general permit, which is the PAG-10, which is what petitioners are objecting to, or an individual permit that would go through full-blown notice and process are separate federal actions this Court has determined in the Leidy case and subject to this Court's jurisdiction, as is there is currently a challenge to the PAG-10. I'm not trying to deal with jurisdiction. I'm just trying to get at one thing, and maybe we've gone as far as we can. I appreciate my colleagues' patience with me. I'm not trying to take us down a rabbit hole. I'm trying to understand the way the system works. The one thing I'm trying to get at is not jurisdiction. It is the due process concern that's been raised, and therefore whether the action of the Department is arbitrary and capricious in this instance by having a contingency which can be satisfied with no notice or comment. Your Honor, may I respond to that briefly? At the time the water quality certification is issued, you're conditionally requiring an NPDES permit for the discharge of hydrostatics test water. If the recipient of the water quality certification files an application for an NPDES permit, there will be opportunity for notice and comment. If they file for application for use under an existing permit, there will not be opportunity for notice and comment on the receipt of the request, but at the time of issuance. However, it's not clear which process will be chosen at the time the water quality certification is issued. Okay. Then what you're saying is when the WQC is issued, there may or may not be due process then, depending upon whether you go for an individual permit or whether the application is made under a general permit. Well, the Department position is that there would be due process available under both circumstances because the processing of the general permit is in accordance with state law. However, it would be- Right, but that already occurred though, right? Isn't that the rub here that under the general permit, as I understand it, correct me if I'm wrong, when somebody seeks to go under the general permit, the due process has already occurred in the establishment of that general permit. So really what's left to be done is whether the applicant qualifies for permission under that general permit. I think that's a clear characterization of state law. Okay. So you're saying there is due process when the general permit is established, and once that general permit is established, the only process that somebody is due is to challenge the legitimacy of the decision to give the new applicant the right to act as a member or participant under that general, whether you qualify under the general permit. And how do they ever know about that? How do they ever know about that? How do they find out about that if the only announcement you make is, we issued this, it's done, we approved it? They are aware that there's a potential when we issue the water quality certification requiring the acquisition of an NPDES permit. And those general permits are there. The notice is you know something might happen, something might be coming. You think that's notice? Well, there is notice of the final action, and there is notice of the permit, and there is notice under the water quality certification that an NPDES permit would be required for such activities. And what action can they take if after the decision is made that this party can act under the general permit, then what's the remedy for a party that's convinced that that decision was in error? Well, in this case, the petitioners have pursued a challenge before this court of that authorization that was issued by the agency this past April. And if that was the notice, what is the comment available to them? Are you suggesting that announcing this is contingent on an NPDES is the notice that it might happen, and therefore a comment period has begun and people should start making comments? Is that the department's position? That is not the department's position. There's no comment period, right? There is no comment period. There is no notice in the Pennsylvania Bulletin of Receipt for Request, a notice of intent to use an existing general permit. Okay. So where's the due process? The due process is as set forth in the regulatory scheme in the Commonwealth's regulations authorizing the use of these NPDES permits. There's three methods that with certain general permits, there is an opportunity for notice of comment upon application to use. And when the original permit was issued, which I believe Your Honor referenced, it was clear that this particular permit for the discharge of hydrostatics test water would not be public notice of receipt of an application to use. We're posting on your timer, but let me ask you a final question. If you had a choice, assume for the sake of discussion that we thought, if we call PDEP's action final for purposes of the Natural Gas Act, then they've got a problem, at least insofar as the NPDES certification goes, because there doesn't appear to be a notice of comment period before things are final. And that would be troubling, perhaps even arbitrary and capricious. That's one possible outcome. Another possible outcome is we look and we say, well, it's not final. There's an EHB hearing that's available, and that cures whatever problem exists with the NPDES permitting. But it does mean that we don't have jurisdiction in this particular case, and we wouldn't until an EHB hearing was held. Now, neither of those is obviously ideal from the Department's standpoint. You're not advocating for either of those. But if you were choosing the lesser of two evils from the Department's perspective, which would it be? Well, from the Department's perspective, the decision to issue the water quality certification is a final action. It's a culmination of our... I completely understand your position, I think. I'm positing for you two outcomes, neither of which are ideal from your perspective, neither of which you want. And if I haven't made them clear, those two alternatives, I'll pose them again. But I'm trying to ask you, from the Department's perspective, which is the lesser of two evils? To be told your action is final, but because your action is final, the conditioning of it on the issuance of a permit as to which there is no notice and comment means that your action is arbitrary and capricious. Take this case back. Or this action is not final. We don't have jurisdiction yet because there needs to be an EHB hearing, which among other things will cure the problem of not having notice and comment for the NPDES permit. From the Department's perspective, if you can answer it, which is the lesser of two evils between those two choices? Well, Your Honor, I'm not sure if I could pick the choice on behalf of the agency being presented with the psychothetical, but the second alternative I think would be more advantageous. I think the critical point that I would make is that the water quality certification, which is the subject of today's proceedings, did not specify in its condition whether the project proponent was required to either register under a general permit or get an individual permit. And if the applicant applied for an individual permit for a discharge of hydrostatic test water, and that could have occurred, the appropriate time for the petitioners to challenge the sufficiency of the Department's decision on an NPDES authorization would be separate. And we're prepared to meet that challenge that's currently pending before the court of the Department's authorization, issuance of authorization to act under the general permit. So your position is take up your challenge to the NPDES permit later, even though the issuance of it may mean that the water quality certification is final? I would argue that, well, they're separate actions, and I think the court has treated them as such. As in the Leiden decision, DRN1, that was a challenge to the water quality certification. The Orion court specifically addressed the issuance of state permits, which were conditions of a water quality certification, which the court viewed as the agency acting pursuant to federal law. Okay, thank you. Okay, thanks very much, Mr. Segan. Thank you. Good morning, Your Honors. John Stobiak for the Intervener Transcontinental Gas Pipeline. If I may just add, if you look at page 56 of our brief, it addresses I think the question Judge Jordan's been asking, where we wrote on page 56 that even if the court were to address petitioner's argument about this NPDES, federal law governing NPDES permits provides that the opportunity for judicial review of an NPDES permit is sufficient to provide for, encourage, and assist public participation in the permitting process. So your position is the process they're due, they get by petitioning us and saying stop everything? Well, that's not what I'm saying. That's what the federal regulations say, 40 CFR section 123.30, and this is a federal issue and those regulations say it is sufficient, and I agree with that. In addition, they were on notice about the general permit process and had the opportunity to comment on that after the water quality certificate was issued. Let me ask you a question, Mr. Stobiak. Doesn't that prove too much because then no notice or comment, like if your due process rights are fully satisfied by being able to petition to this court, I guess in theory you're saying they could issue water quality certification with no record. They could just say, yeah, you're good to go, and then your argument would be your opportunity to fight that, environmental groups, is to petition to the court of appeals and take your argument to them. No, I'm not saying that you should issue a water quality certificate without any record. In fact, here you have a record that has the application, notice of the application, comments from petitioners, a technical deficiency letter from the DEP, and all 43 page response. So you have a very full 23,000 page record on the water quality certificate. I'm not asking you about this record. I'm asking you about the legal assertion you've made that the federal regulations say that due process is fully certified by being able to petition a court of appeals. That's the argument you're making. For NPDES with a general permit, yes. Is that what the federal regulation says? Yes, that's what it says. So it's only as to that? Yes, that's referring to the NPDES permit, the regulation I just cited to you. Okay. I think in terms of the jurisdictional issue, it sounds as if the court understands, but there's really three things you need to look at. The Natural Gas Act, which establishes exclusive and original jurisdiction for courts of appeal, to stop the sequential appeals, the delays that are associated with those appeals. Secondly, if you look at Chief Judge's opinion, presidential opinion in DRN2 or Delaware Riverkeeper 2 involving the Orion, where he points out that the DEP permits for a water quality certificate have all the hallmarks of a final action. The answer, please, Mr. Freed's assertion, and of course it's in the briefing, you briefed it, but I'm interested to hear your response to what he's presented here today, that the program that the state has set up anticipates the need for an EHB review. It's not like an appeal. It's a de novo process. It is the creation of the record. It is the completion of the record by the taking of new evidence, taking new testimony, and the filling out of a complete record. Before you do that, you don't have what people understand to be a full record, and the state courts have observed and agreed with that view. That's several questions in one, but that's what I understand their position to be. Well, number one, the Natural Gas Act and the EP5 Act amendments, the Energy Policy Act of 2005 amendments, prevail and trump that, in essence, in the sense that this is a federal question, and that's the federal law that you appeal to the courts of appeals. So you're saying it doesn't have to be final action? It is a final action. Their assertion is it's not. It is. That's their point. That's the point I'm trying to get you to engage on. They're saying the state courts themselves have said this isn't really a final action until there's been an EHB review because it's de novo and they're taking new evidence and the record is not complete. It's not final until after EHB review. That's not what the state courts tell you. And if you apply the hallmarks of a final action, the action of the Pennsylvania Department of Environmental Protection is concluded. The EHB is a separate quasi-judicial independent agency. They hear evidence that there is an appeal. Whether there's an appeal or not, as Mr. Freed conceded, and I've been there, if you have a landfill permit, you can start building your landfill once you have a permit. That's somebody going out and getting a supersedious. You can continue to build a project. You can proceed with a pipeline once you have a water quality certificate or certificate of public convenience and necessity and the notices to proceed from FERC. That's a final action. You can start construction. You can start building those things. That is the hallmark of it, that you have legal rights, and the process is concluded as to the agency, the Department of Environmental Protection. So that's why it's a final action and why you don't even have to get to the debate of whether or not finality is required under the Natural Gas Act, although it is an interesting point that it's not in the words of the Natural Gas Act in 17RD1 about finality. You claim we get to the same point even if we find finality is required. Even if you find finality is required, this is a final action, and it's fundamentally different than what happened in Massachusetts. In Massachusetts, the appeal goes internally within the agency, not like here where it goes externally to the Environmental Hearing Board. Secondly, you cannot start proceeding under the permit in Massachusetts until that agency review finishes through that appeal process. Here, you can. Those are fundamental differences that indicate that this is a final action here. The other thing that you need to just, if I may, just for a second, consider, and this was referenced a little bit, this is a federal question. This is the Natural Gas Act, and you have the Clean Water Act that allows states to review and do a water quality certificate where they review federally approved state water quality standards and the federal requirements of the Clean Water Act. They have to do that in a reasonable period of time, not to exceed one year. The Environmental Hearing Board, by its own admissions and its practice and procedure manual, takes a year and a half to two years to complete the hearing process. Understood. So you would inevitably have in that scenario a waiver every time because the process goes on forever. Okay. Thank you. Thanks very much, Mr. Stogiat. Your rebuttal. Thank you, Your Honor. Just very briefly, I think what the notice argument highlights, what my arguments about due process highlight is that by reading the finality the way DEP and transcript wants us to read the finality, it throws a monk's wrench into the whole Pennsylvania process that's been set up. It undermines the entire process. It undermines due process, and it has significant consequences. There's been a lot of talk about the fact, well, there is a record. There's not a record. My question is, if DEP is establishing a record without an EHB process, what standards are they using? There are no standards. The only standard for establishing a record in these situations is to go through the EHB process. I know the Court is probably aware of this. There's been discussion. I think even Mr. Stogiat said that once the Water Quality Certification is issued and once the Certificate of Public Convenience is issued, there's nothing left for DEP to do. That's obviously not correct because as a conditional Water Quality Certification, DEP still has to issue those permits, and only after those permits are issued should construction take place. You can challenge those permits at that time, those downstream permits, right? You can challenge the permits at that time, but, again, getting to what the harm that we're talking about is, by that point- Harm accrues before that happens. Harm accrues long before that happens. The harm, as I understand your position, is that the eminent domain process begins. It begins and ends. The pipeline begins to be constructed, right? Well, you said the pipeline does not begin to be constructed. But the takings occur. The taking takes place. Tree felling takes place. A lot of activities are taking place at that point, and that's why I think it was important to have the Court at least consider the idea that there are other harms besides pure construction. And if they can't satisfy the downstream permitting requirements, you've got a bunch of people who had at least a taking occur that never should have occurred because the pipeline would have been not consummated, right? And I'll go one step further, which is in our situation, even where the permits are issued after the fact and have been challenged, you know, it makes the challenge a nullity because the property is gone. There's no ability to actually seek redress by a challenge of those permits. But that taking really is a function of the National Gas Act, right? The National Gas Act, Congress has put all that in motion by enacting that, right? Because under the Natural Gas Act, there's an assumption, an avowed assumption, which is why FERC assumed that when DEP issues a water quality certification, they're saying you have a viable project, and that's why DEP had to write a letter to them in 2016 saying, whoa, whoa, whoa, you're putting too much stock in our water quality certification. And FERC's like, no, we're not. This is exactly what 401 says a water quality certification is. Okay, thanks. Thank you. Mr. Stemplewitz, we've got one minute, and I suggest you use it responding specifically to the citation to the federal regulation made by Mr. Stoviak. Yes, and I would say that what is required here is that Section 401A1 and the public notice requirements of that section are satisfied. And here we simply do not have that. I'm trying to get you to respond to Mr. Stoviak's assertion that this NPDES permit specifically, this kind of permit is the kind of permit that, as a matter of federal regulation, the federal law says you get your process by being able to petition to the Court of Appeals. That's how he's characterized it. What's your response? An aggrieved party would have, if that were true, an aggrieved party simply would have no ability to challenge the substance of whether or not an applicant satisfied the criteria of a NPDES permit. They would have no opportunity to develop a record and challenge that if that were true. And that's exactly so. Several references have been made to a separate appeal that we brought challenging the specific NPDES permit, and I would like to submit to this Court that the only challenge that we can bring in that matter is a challenge to the procedure because we never had the opportunity to see the content of that application and provide... But doesn't this Court have the power to say that that procedure was defective? Yes. Constitutionally or otherwise? Yes. So that sounds like a pretty... It's the same argument we're making here. It sounds like a pretty vigorous remedy then, if you win that case. Well, and it's the same exact... we would make the same exact argument we made here, which is that there was no opportunity for public comment, notice, no ability to build a record in that case. We would be precluded from making any argument regarding the substance, and that's why it's so important that the EHB have jurisdiction so that we can have our due process, so that we can challenge... It sounds like a really strong argument for us deciding that issue in that case, not this one. So I would disagree because I also think that the Third Circuit has also been very clear that PAYDEP has not published any procedures for issuing water quality certificates. It doesn't have to. You say the publication is what matters, not the control of due process, and I'm not sure I understand that. Well, I think they're both important, because 401A1 requires that the state shall establish procedures for public notice. It doesn't say publish. You're just saying shall establish means publish. Yeah, and I would... You set up a published regulatory scheme. And I would... I guess that begs the question, how would one establish procedures if they don't publish procedures? If there's no published procedures, how can they have been established to satisfy Section 401A1? Okay. Thanks, Mr. Stepkowitz. We thank both sides for their argument in the briefing. We appreciate the quality of it, and we will take it.